IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SPRAJ PROPERTIES LLC, *et al.*,       §
                                      §
     Plaintiffs,                    §
                                      §
v.                                    §     Civil Action No. 3:13-CV-3472-N
                                      §
REGIONS BANK,                         §
                                      §
     Defendant.                     §

## ORDER

     This Order addresses Plaintiff SPRAJ Properties LLC's ("SPRAJ") motion for partial summary judgment [40] and Defendant Regions Bank's ("Regions") amended motion for summary judgment [47].  For the reasons that follow, the Court grants SPRAJ's motion and grants in part and denies in part Regions's motion.[1]

### I. ORIGIN OF THE MOTIONS

#### A. The Parties' Business Relationship

     This dispute stems from a series of loans Regions made to SPRAJ and Dibon Solutions Inc. ("Dibon"), which is also a party to this action.  The parties' relationship began in April of 2012 when Regions agreed to provide a $1,800,000.00 loan (the "Construction Loan") for the purchase and renovation of an office building in Dallas, Texas (the "Property").  The parties executed a U.S. Small Business Administration Note, which listed Regions as lender and SPRAJ and Dibon as borrowers.  *See* App. Regions's Am. Mot.

---

[1]The Court also denies as moot Regions's motion for summary judgment [43].

Summ. J. ("Regions App.") 104 [docs. 49–49-7].  The parties also executed a loan agreement (the "Construction Loan Agreement"), which provided the terms of the loan.  *See id.* at 111–119.  The Construction Loan Agreement also lists Regions as lender and SPRAJ and Dibon as borrowers.  *Id.* at 111.  The Construction Loan Agreement contained a "Multiple Borrowers" provision, which states:

> MULTIPLE BORROWERS.  This Agreement has been executed by multiple obligors who are referred to in this Agreement individually, collectively and interchangeably as "Borrower." . . . Borrower understands and agrees that, with or without notice to any one Borrower, Lender may (A) make one or more additional secured or unsecured loans or otherwise extend additional credit with respect to any other Borrower; . . . (F) apply such security and direct the order or manner of sale of any Collateral . . . .

*Id.*

To secure the Construction Loan, the parties executed two deeds of trust and a commercial security agreement.  Of particular relevance here is the first deed of trust (the "Dallas Deed of Trust"), which conveyed the Property to a trustee for Regions's benefit.  *See id.* at 121.  The Dallas Deed of Trust contains a "Cross-Collateralization" provision, which states:

> In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower or Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of this Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accomodation party or otherwise.

*Id.* The Dallas Deed of Trust defines "Note" as the promissory note evidencing the $1,800,000.00 Construction Loan. *Id.* at 126. It defines "Lender" as Regions, and it defines "Borrower" as either SPRAJ or Dibon. *Id.* Finally, the Dallas Deed of Trust states that an event of default includes:

> OTHER DEFAULTS. Borrower or Grantor fails to comply with or to perform any other terms, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents *or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.*

*Id.* at 123–124 (emphasis added).

In connection with the Construction Loan, Atul Nanda, another party to this action, executed a U.S. Small Business Administration Unconditional Guarantee ("Construction Loan Guaranty"). *See id.* at 149–153. In the Construction Loan Guaranty, Nanda unconditionally guarantees payment of the Construction Loan to Regions. *See id.* at 149.

In June of 2012 – and unrelated to the Construction Loan – Regions also extended a revolving line of credit (the "Line of Credit") to Dibon up to 1,500,000.00. *See id.* at 183–185. In connection with the Line of Credit, Regions and Dibon executed a promissory note, *see id.* at 185, a business loan agreement, *see id.* at 186–192, and a commercial security agreement (the "Line of Credit Security Agreement"), *see id.* at 193–197. The Line of Credit Security Agreement lists Dibon as grantor and Regions as lender and provides that "all accounts" of Dibon serve as security. *Id.* at 193. The Line of Credit Security Agreement also contains a merger clause that stated "[t]his agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the

matters set forth in this Agreement."  Pl. SPRAJ App. Supp. Mot. Partial Summ. J. ("SPRAJ App.") 046.

The Line of Credit promissory note, the Line of Credit business loan agreement, and the Line of Credit Security Agreement contain "Other Defaults" provisions similar to that included in the Dallas Deed of Trust.  In connection with the Line of Credit, Plaintiff Nanda also executed a commercial guaranty (the "Line of Credit Guaranty").  *See* Regions App. at 198–200.  In the Line of Credit Guaranty, Nanda provides a personal guaranty for all the indebtedness of Dibon to Regions.  *See id.* at 198.

In addition to the Line of Credit, Regions also provided Dibon with an automobile loan (the "Automobile Loan").  In connection with the Automobile Loan, the parties executed a promissory note, *see id.* at 201–202, a business loan agreement, *see id.* at 203–208, and a commercial security agreement (the "Automobile Security Agreement"), *see id.* at 209–213.  The Automobile Security Agreement lists Dibon as grantor and Regions as lender and provides that a 2012 Fisker Karma automobile serves as collateral.  The Automobile Loan promissory note, the Automobile Loan business loan agreement, and the Automobile Security Agreement contain "Other Defaults" provisions similar to those included in the Line of Credit documents and the Dallas Deed of Trust.  *See id.* at 201, 205, 211.  Finally, in connection with the Automobile Loan, Nanda also executed a commercial guaranty (the "Automobile Guaranty"), *see id.* at 214–216, in which Nanda provides a personal guaranty for all the indebtedness of Dibon to Regions.  *See id.* at 214.

On June 4, 2014, Dibon defaulted on the Line of Credit by failing to pay the full amount owed on the date of maturity.[2]  *See* SPRAJ App. 050.  Regions invoked Dibon's default on the Line of Credit to accelerate the Construction Loan and the Automobile Loan. *See id.* at 050, 053 (providing notice of acceleration and identifying the loans being accelerated).

### B. The Parties' Litigation

On August 28, 2013, SPRAJ and Nanda filed suit against Regions in the 68th Judicial District Court of Dallas County, Texas, asserting claims for breach of contract, violation of the Deceptive Trade Practices Act ("DTPA"), and seeking declaratory relief and a temporary restraining order ("TRO") preventing Regions from foreclosing on the Property.  On the same day, Regions removed the action to this Court.  *See* Not. Removal [1].  This Court denied the motion for TRO on August 30, 2013, concluding Plaintiffs failed to establish a likelihood of success on the merits.  *See* Order, Aug. 30 2 [10].

Following the Court's denial of the motion for TRO, SPRAJ filed a voluntary petition for bankruptcy.  *See In re SPRAJ Properties, LLC*, Case No. 13-34438-HDH-11 (Bankr. N.D. Tex. filed Aug. 30, 2013).  Regions filed an amended proof of claim in the SPRAJ bankruptcy for $1,800,000.00, secured by the Property.  *See* Regions App. 251, 254–257. Pursuant to the Bankruptcy Court's order, the Property was sold for $1,988,534.87, and the Bankruptcy Court ordered $1,800,000.00 of the proceeds go toward satisfaction of Regions's claim.  SPRAJ objected to the claim, and Regions filed a motion to withdraw the Bankruptcy

---

[2]Plaintiffs do not dispute that Dibon defaulted on the Line of Credit.

Court's reference. *See* May 1, 2014 Not. Transmittal [1], *in Regions Bank v. SPRAJ Properties LLC*, Civil Action No. 3:14-CV-1599-N (N.D. Tex. filed May 1, 2014) (the "Claim Objection"). The Court consolidated the Claim Objection into this action, and granted Regions's motion to withdraw the reference. *See* Order Consolidating Cases [17]; July 22, 2014 Order [19].

Regions also filed a separate lawsuit against Nanda on June 5, 2014, seeking damages for his alleged breach of the guaranties and attorneys' fees. *See Regions Bank v. Nanda*, Civil Action No. 3:14-CV-2052-N (N.D. Tex. filed June 5, 2014) (the "Nanda Suit"). The Court consolidated the Nanda Suit with this action on September 29, 2014. *See* Order of Consolidation [22]. Regions later amended its complaint to include claims against Dibon and SPRAJ. *See* Am. Compl. [26]. The parties filed cross motions for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS SPRAJ'S MOTION FOR SUMMARY JUDGMENT

Based on the facts as presented above, SPRAJ seeks partial summary judgment to the effect that it cannot be held liable for Dibon's default under the Line of Credit. The Court grants SPRAJ's motion.

***A. The Construction Loan Security Agreement's Cross-Collateralization Clause
Does Not Apply to Dibon's Default Under the Line of Credit***

    ***1. Texas Recognizes Drag Net Collateralization Clauses.*** – The parties agree that Texas generally recognizes "drag net" collateralization clauses like the Dallas Deed of Trust's cross collateralization provision. *See* SPRAJ's Br. Supp. Mot. Summ. J. 6 [41] (citing TEX. BUS. & COM. CODE ANN. § 9.204(c)). The parties also agree that "Texas courts do not recognize the enforceability of drag net clauses unless the subsequent debt to be secured was reasonably within the contemplation of the parties to the deed of trust at the time it was executed." *Craig v. Ponderosa Dev., LP*, 392 B.R. 683, 690 (E.D. Tex. 2007) (quoted by SPRAJ's Br. Supp. Mot. Summ. J 6). In determining whether a subsequent debt was reasonably in the contemplation of the parties, "the court is directed to look exclusively to the language of the deed of trust, unless ambiguous, to determine the intention of the parties at the time of its execution." *Craig*, 392 B.R. at 691 (citing *In re Conte*, 206 F.3d 536, 538 (5th Cir. 2000)). Although the parties disagree on whether the subsequent debt was reasonably within their contemplation at the time they executed the Construction Loan Security Agreement, the Court decides SPRAJ's motion on an alternate basis and so does not decide this issue.

    ***2. The Line of Credit Security Agreement's Merger Clause Precludes Reference to the Cross-Collateralization Provision.*** – SPRAJ argues that because the Dibon Line of Credit Security Agreement purports to be fully integrated[3] and specifies its own source of

---

[3]The Line of Credit Security Agreement contains an "Amendments" clause, which provides in relevant part "This agreement, together with any Related Documents, constitutes

collateral, the Construction Loan's cross-collateralization clause does not apply.  *See* SPRAJ's Br. Supp. Mot. Summ. J. 9.  The parties do not cite, and the Court could not find, any Texas state or federal decisions directly addressing this argument.  The Court did find, however, decisions on point from out of state, which the Court finds persuasive.

The Supreme Court of Utah addressed a very similar scenario in *First Security Bank of Utah v. Shiew*, 609 P.2d 952 (Utah 1980).  There, in connection with the purchase of a home, the defendant signed a mortgage with the plaintiff-bank, assigning the home as collateral for the home loan and for "all claims or demands . . . hereafter contracted or incurred."  *Id.* at 953.  The defendant later took out a loan for an unrelated transaction from the same bank.  The second loan identified collateral securing the loan, and contained a merger clause that provided "[t]his agreement constitutes the entire agreement between the parties."  *Id.*  When the defendant defaulted on the second loan, the bank sought recourse under the mortgage's cross-collateralization clause.  *See id.* at 953–54.  The court reasoned that a cross-collateralization clause is essentially a debtor's continuing offer of the initial collateral as security for any subsequent loan.  *Id.* at 957.  The court held the legal significance of the merger clause "was the preclusion of any claim by the bank that it had

---

the entire understanding and agreement of the parties as to the matters set forth in this Agreement."  SPRAJ App. 046.  In Texas, "merger" clauses like this one typically establish the contract as an integrated instrument, and as a general matter prevent the introduction of extrinsic evidence under the parol evidence rule.  *See, e.g.*, *Tellepsen Builders, L.P. v. Kendall/Heaton Assocs., Inc.*, 325 S.W.3d 692, 699 (Tex. App. – Houston [1st Dist.] 2010, no pet.).

accepted the mortgagors' continuing offer to secure future advances with the real estate mortgage on their home." *Id.*

An appellate court in New Jersey came to a similar conclusion in *Lorusso v. Schaible*, 2011 WL 4388355 (N.J. Super. Ct. App. Div. 2011). There too, the defendant had signed a mortgage agreement containing a broad cross-collateralization clause. *Id.* at *2. Later, the defendant took out a loan from the same lender that contained a merger clause that stated "[t]his agreement and the Loan Documents contain the entire agreement between the parties relating to the subject matter hereof and supersede all oral statements and prior writings with respect thereto." *Id.* at *3. When the defendant defaulted on the second loan, plaintiffs sought to foreclose on the house secured by the first mortgage. *Id.* at *4. The court first concluded that the cross-collateralization provision was valid. *Id.* at *5–6. However, the court ultimately concluded that the merger clause barred incorporation of the mortgage's cross-collateralization provision into the subsequent loan. *Id.* at *9–10.

In response to this argument, Regions cites *Wagner v. Compass Bank*, 170 S.W.3d 220 (Tex. App. – Dallas 2005, no pet.). In *Wagner*, the court upheld the application of a cross-collateralization clause to a default under a subsequent loan. *Id.* at 225. The court rejected the debtor's argument that the subsequent loan did not reference the prior security agreement, holding "it is not necessary for a subsequent agreement to reference the prior pledged collateral for the future advance clause to apply." *Id.* at 223 (citing *Magnum Mach. & Tool Corp. v. First Nat'l Bank of Seaguin*, 545 S.W.2d 549, 551 (Tex. Civ. App. – Eastland 1976, no writ)). However, neither *Wagner* nor *Magnum* involved subsequent loan

agreements that contained merger clauses explicitly stating that the loan agreement constituted the entire agreement of the parties. Those cases thus do not meet Defendants' argument head on.

In the apparent absence of Texas authority squarely addressing this issue, the Court makes an *Erie* guess as to how the Texas Supreme Court would decide the issue. *See, e.g.*, *Flynn v. State Farm Fire & Cas. Ins. Co.*, 605 F. Supp. 2d 811, 814–15 (W.D. Tex. 2009). The Court agrees with the analysis conducted in *Lorusso* and *Shiew* and concludes that the merger clause in the Line of Credit Security Agreement precludes Regions's reliance on the cross-collateralization clause from the Construction Loan Security Agreement. The merger clause explicitly states that the Line of Credit Security Agreement constitutes the entire agreement existing between the parties as to the matters discussed therein, and the parol evidence rule thus limits the Court's ability to refer to prior agreements between the parties pertaining to the Line of Credit Security Agreement. *See supra* note 4. The Line of Credit Security Agreement contains its own "Collateral" provision, which makes no reference to the Construction Loan Security Agreement. The Court holds the Construction Loan Security Agreement's cross-collateralization clause provides Regions with no additional remedies for Dibon's default under the Line of Credit.

## IV. THE COURT GRANTS REGIONS'S MOTION FOR SUMMARY JUDGMENT IN PART AND DENIES IT IN PART

Regions seeks judgment that (1) SPRAJ cannot recover against it for breach of the Construction Loan contract; (2) neither SPRAJ nor Nanda can recover against it for violation of the DTPA; (3) SPRAJ and Dibon breached their various loan contracts with Regions, and

(4) Nanda breached his guaranties of SPRAJ and Dibon's loans.  Regions also seeks

summary judgment that it is entitled to apply the Construction Loan Security Agreement's

cross-collateralization clause to Dibon's default under the Line of Credit.  Having granted

SPRAJ's motion for summary judgment as discussed above, the Court denies Regions's

motion is that regard.

### A. The Court Grants Regions Summary Judgment on
### SPRAJ and Nanda's Breach of Contract Claim

Regions moves for summary judgment on SPRAJ and Nanda's claim for breach of

contract.  In order to prevail on a claim for breach of contract, a plaintiff must prove (1) the

existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3)

breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the

breach.  *E.g.*, *Lewis v. Bank of America NA*, 343 F.3d 540, 544–45 (5th Cir. 2003).  SPRAJ

and Nanda's breach of contract claim is based on Regions's alleged failure to distribute funds

according to the terms of the Construction Loan.  Specifically, SPRAJ and Nanda allege

Regions "failed and refused to release the $675,000 in post-closing funds required by the

loan agreement." Pls.' Orig. Pet. 6 [1-1].  Regions argues it did not disburse the post-closing

funds because SPRAJ failed to satisfy conditions precedent to the distribution, thus

challenging the second element of a the breach of contract claim.  *See* Regions Br. Supp.

Mot. Summ. J. 13–14 [48].

The Construction Loan Agreement contains a list of conditions precedent to each

distribution.  *See* Regions App. 112–113.  Those conditions require SPRAJ, among other

things, to obtain approval of all contractors, subcontractors, and materialmen working on the

Property, and to avoid any "Events of Default" under the Construction Loan Agreement. *Id.* at 113. "Event of Default" is defined to include SPRAJ's failure "to comply with or to perform any other term, obligation, covenant or condition contained in th[e] Agreement . . . ." *Id.* at 116. The Agreement contains a set of affirmative covenants that require SPRAJ to "permit [Regions] to examine and audit [SPRAJ's] books and records at all reasonable times[,]" "[f]urnish [Regions] with such financial statements and other related information at such frequencies and in such detail as [Regions] may reasonably request[,]" and "[f]urnish . . . tax returns, and other reports with respect to [SPRAJ's] financial condition and business operations as [Regions] may request from time to time." *Id.* at 114.

Regions presents evidence that SPRAJ failed to provide requested tax information and obtain approval of its selected contractor. *See id.* at 233–242. Regions' evidence consists of a series of emails exchanged between SPRAJ and Regions representatives in which Regions expressed to SPRAJ that it had failed to provide 2012 tax returns, and failed to obtain approval of its construction contractor. *See id.* at 238. Indeed, this request came after SPRAJ's representative, Greg Feigel, stated that he would procure for Regions the requested financial and tax information. *Id.* at 241. Feigel was later equivocal about whether he would procure the requested information. *See id.* at 239. Regions's evidence demonstrates that as of May 8, 2013, SPRAJ had failed to obtain approval of its contractor and to provide the financial and tax information requested by Regions.

SPRAJ and Nanda respond by first arguing that Regions failed to disburse $275,000.00 in proceeds that they appear to contend were not contingent on satisfying the

contractual covenants.  *See* SPRAJ's Resp. Regions Mot. Summ. J. 17 [53].  However, SPRAJ and Nanda do not point to the contractual provisions on which this argument relies, and cite only a conclusory affidavit in support of the argument.  *See id.* at 10 (citing App. Supp. SPRAJ's Resp. 2 [54-1]).  SPRAJ and Nanda thus fail to explain why this $275,000.00 distribution was not contingent on SPRAJ performing its obligations under the Construction Loan Agreement.

SPRAJ and Nanda also argue that Regions breached the Construction Loan Agreement in December of 2012, well before it made the requests for SPRAJ's financial and tax information.  In support, SPRAJ and Nanda cite correspondence from Lisa Frederick, a Regions representative, that appears to indicate SPRAJ had submitted the requisite documentation to begin receiving distributions under the Construction Loan Agreement.  *See* App. Supp. SPRAJ's Resp. 116-117.  SPRAJ and Nanda also submit evidence that a Mr. Doyle Damron, an employee for Regions, recommended distribution of funds, and that he would not do so unless SPRAJ's prerequisites were satisfied.  *See id.* at 40; 48–49.  But the very evidence on which SPRAJ and Nanda rely indicates that Regions still had to review and confirm the sufficiency of SPRAJ's submissions before making disbursements.  *See id.* at 40 (noting submission of required forms simply resulted in a recommendation to disburse).  The evidence indicates that Frederick and Damron were mere gatekeepers, not the parties charged with confirming SPRAJ had complied with the Construction Loan Agreement.  *See id.* at 37–38 (Frederick noting that submitted documents had to be forwarded to Regions's "Port Admin" for a final determination as to whether they were sufficient under the contract.).

Thus, SPRAJ and Nanda's proffered evidence does not indicate that Regions breached the Construction Loan Agreement in December of 2012.  Rather, at most it indicates SPRAJ had submitted requested documents that still had to be reviewed for sufficiency.  Moreover, SPRAJ's obligations under the contract were ongoing; thus, even if SPRAJ could show it was in compliance as of December 2012, Regions's subsequent requests for information still had to be honored under the plain language of the contract.

SPRAJ and Nanda fail to rebut Regions's evidence demonstrating that as of May 2013, SPRAJ was in breach of the Construction Loan Agreement.  Regions has thus sufficiently negated the "breach" element of SPRAJ and Nanda's breach of contract claim. The Court accordingly grants Regions summary judgment on SPRAJ and Nanda's breach of contract claim.

### B. The Court Grants Regions Summary Judgment on SPRAJ and Nanda's DTPA Claim

Regions also seeks summary judgment on SPRAJ and Nanda's DTPA claim, arguing that the Construction Loan involved consideration of over $500,000.00, and was thus exempt from the DTPA.  *See* Regions Br. Supp. Mot. Summ. J. 15; TEX. BUS. & COM. CODE. ANN. § 17.49(g) ("Nothing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence.").  In turn, SPRAJ and Nanda assert their DTPA claim is based

solely on the Dibon Line of Credit, for which SPRAJ received no consideration. *See* SPRAJ's Resp. Regions Mot. Summ. J. 24–25.

SPRAJ and Nanda's argument is foreclosed by section 17.49(g)'s language excluding from the DTPA any "set of transactions relating to the same project" with value of over $500,000. TEX. BUS. & COM. CODE ANN. § 17.49(g). Although the DTPA does not define "project," the Court interprets that term in light of section 17.49(g)'s purpose of "remov[ing] from the scope of the [DTPA] . . . litigation between big businesses." *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 473 (Tex. App – Fort Worth 2004, no pet.) (ellipses in original). In *Fidelity Telealarm, L.L.C. v. Silver Resources Inc.*, 2004 WL 1047661 (E.D. Pa. 2004) the court, applying the Texas DTPA, defined "project" as a "planned undertaking," and held that a long running distribution relationship between two parties constituted a project. *Id.* at *7. So too here, SPRAJ and Nanda's DTPA claim arises from the financial services relationship and the Construction Loan project existing between SPRAJ, Dibon, and Regions.[4] As Regions points out, this set of transactions, particularly the Construction Loan, was worth $1,800,000.00 to SPRAJ. SPRAJ and Nanda's claim is thus based on a set of

---

[4]Indeed, were SPRAJ and Nanda's DTPA claim more narrowly construed to arise only from the Dibon Line of Credit transaction, it is not clear they would have standing as "consumers" under the DTPA. *See, e.g.*, *Brittan Commc'ns Int'l Corp. v. Southwestern Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) (holding that to have standing as a consumer under the DTPA, a plaintiff must have sought or acquired goods or services by purchase or lease, *and the goods or services must form the basis of the complaint*). It is not immediately clear to the Court what goods or services SPRAJ or Nanda sought or acquired pursuant to the Dibon Line of Credit.

transactions involving consideration in excess of $500,000.00, and the Court grants summary judgment in Regions's favor on the DTPA claim.

### C. The Court Grants Regions Summary Judgment on Its Breach of Contract Claims

Regions seeks summary judgment on its claims for breach of contract against SPRAJ and Dibon.  Regions's claims stem from Dibon's breach of the Line of Credit and Regions's resulting acceleration of the Construction Loan and the Automobile Loan.  Nanda acknowledges that Dibon breached the Line of Credit by failing to repay it in full on its date of maturity.  *See* Regions App. 247.  According to the plain language of the Construction Loan, the Line of Credit, the Automobile Loan, and the "Other Defaults" provisions contained therein, Dibon's breach of the Line of Credit constituted breaches of the Construction Loan and the Automobile Loan.  Although SPRAJ dedicates a considerable amount of time arguing against application of the cross-collateralization provision, nowhere does it attempt to dispute Regions's claim that Dibon's breach of the Line of Credit also constituted breach of the other two loans.  Accordingly, the Court grants Regions summary judgment on its breach of contract claims against SPRAJ and Dibon.

### D. The Court Grants Regions Summary Judgment on Its Breach of Guaranties Claims

Finally, Regions seeks summary judgment as to its breach of guaranties claims against Nanda.  A guaranty "creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform." *Republic Nat'l Bank of Dallas v. Nw. Nat'l Bank of Fort Worth*, 578

S.W.2d 109, 114 (Tex. 1978). To recover on a claim for breach of guaranty, "a creditor must establish that: (1) the note and guaranty exist; (2) the guarantor signed the guaranty; (3) the creditor legally owns or holds the guaranty; and (4) a certain balance remains due and owing on the note." *Caterpillar Fin. Servs. v. Lewis*, 2011 WL 665407, at *2 (N.D. Tex. 2011).

As previously discussed, Nanda signed guaranties making himself personally accountable for the debts associated with the Construction Loan, the Line of Credit, and the Automobile Loan. Nanda has acknowledged that he made the guaranties. *See* Regions App. 245, 246, 247; *see also id.* at 149–153; *id.* at 198–200; *id.* at 214–216. Nanda does not respond to Regions's arguments concerning Nanda's liability on the commercial guaranties. Accordingly, the Court grants summary judgment to Regions on its claims for breach of commercial guaranties.

### E. The Court Grants Regions's Motion for Attorneys' Fees

Regions also seeks to recover its reasonable attorneys' fees and costs pursuant to the various loan documents and the Texas Civil Practices and Remedies Code section 38.001, which allows for recovery of attorneys' fees in contract actions. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. The various loan documents contain attorneys' fees provisions that require the debtors to pay the reasonable attorneys' fees and expenses associated with a default. *See, e.g.*, Regions App. 117, 184, 201. "The burden of proving the reasonableness of attorneys' fees is on the party seeking them." *Sharif v. Wellness Int'l Network*, 2008 WL 2885186, at *2 (N.D. Tex. 2008) (citing *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d

1, 10 (Tex. 1991)).  The Texas Supreme Court has established a list of factors to determine

if an attorneys' fee award is reasonable.  *See Arthur Andersen & Co. v. Perry Equipment Co.*,

945 S.W.2d 812, 818 (Tex. 1997).[5]  In support of its request for attorneys' fees, Regions

submits the affidavit of its attorney, Kate Gaither (the "Gaither Affidavit"), as well as

itemized billing records associated with this case.  *See* Regions App. 345–544.  Regions

requests $197,789.73 in attorneys' fees and $11,923.93 in costs associated with this action.

*Id.* at 350.

      Although the Gaither Affidavit does not address in detail each of the *Arthur Andersen*

factors, it is sufficient to persuade the Court the attorneys' fees and costs requested are

reasonable.  This case has been ongoing for almost two years and has required litigation on

multiple fronts, including in the bankruptcy courts.  Given the length and breadth of the

parties' dispute, it has almost certainly precluded other employment by Regions's counsel.

Moreover, Regions has obtained a very favorable result in this action, winning summary

judgment on all Plaintiffs' claims against it and on its own claims for breach of contract and

breach of guaranties.  Gaither has sworn to the reasonableness of the hours and fees

---

      [5]The *Arthur Anderson* factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.  945 S.W.2d at 818.

associated with litigating this case.  *See id.* at 3499-50.  Plaintiffs do not respond to Regions's arguments and evidence concerning its entitlement to attorneys' fees and costs. Accordingly, the Court grants Regions's motion and awards it the full amounts requested of $197,789.73 in attorneys' fees and $11,923.93 in costs.

## CONCLUSION

For the foregoing reasons, the Court grants SPRAJ's motion for summary judgment as to its claim that Regions cannot seek recourse against it for Dibon's default on the Line of Credit under the Construction Loan Security Agreement's cross-collateralization clause. The Court grants summary judgment in favor of Regions on Regions's breach of contract claim against SPRAJ.  SPRAJ's objection to Regions's bankruptcy claim is remanded to the Bankruptcy Court for proceedings consistent with these determinations.

The Court also grants summary judgment to Regions on SPRAJ and Nanda's DTPA claim against Regions.  Further, the Court grants summary judgment to Regions on Regions's breach of contract claims against Dibon and Nanda, and on Regions's breach of guaranties claims against Nanda.  Finally, the Court grants Regions's motion for attorneys' fees.

Signed May 12, 2015.

David C. Godbey
United States District Judge